**Michael SKALON, Appellant–Respondent,**

v.

**Leesa SKALON–GAYER,
Appellee–Petitioner.**

**No. 79A02–9612–CV–770.**

Court of Appeals of Indiana.

May 5, 1997.

Christopher P. Hopson, Pearlman, Chosneck, Haniford, Morrissey & Hopson, Lafayette, for Appellant–Respondent.

E. Kent Moore, Laszynski & Moore, Lafayette, for Appellee–Petitioner.

**OPINION**

FRIEDLANDER, Judge.

Michael Skalon appeals from an order setting the amount of his child support obligation and declining to order that his child pay a portion of her own higher education expenses. Skalon presents the following restated issues for review:

I. Did the trial court err in computing Skalon's support obligation?

2. Did the trial court err in declining to order Skalon's daughter to pay a portion of her higher education expenses?

We reverse in part and remand.

Skalon and Leesa Skalon–Gayer were divorced by a decree of dissolution entered on September 26, 1991. Skalon–Gayer was awarded custody of the two children of the marriage, Shauna, born on April 14, 1978, and Chase, born on July 25, 1987. Skalon was ordered to pay $425.00 on the 1st and 15th of each month.

On February 23, 1993, Skalon filed a petition to modify, seeking a reduction in support based upon, *inter alia*, a change in the Indiana Child Support Guidelines (the Guidelines). The trial court denied the petition.

On April 8, 1996, Skalon–Gayer filed a Petition for Contribution to Higher Education Expenses pertaining to Shauna. The trial court granted the petition, entering the following order:

1. The Court grants the petition for contribution to educational expenses.

The Court finds that the oldest child of the parties, Shauna Jo Skalon, has the aptitude and ability for higher education and that it is appropriate for her to attend the Art Institute of Illinois. Accordingly, the former husband shall pay seventy-four per cent (74%) of the room, board, tuition, books, and fees for her higher education at the Art Institute of Illinois and the former wife shall pay twenty-six per cent (26%) of such expenses for a two-year curriculum. Shauna shall pay her own transportation costs and miscellaneous expenses while attending college. Any scholarships or non-reimbursable grants shall be deducted be-

fore the husband shall be required to contribute his seventy-four per cent (74%).

When Shauna departs for school support is reduced to the amount of $174.00 per week, commencing the first Friday after her departure. Additionally, the former husband shall pay an additional $59.00 per week for each full week that Shauna is not in school and resides with her mother.

2. The former wife is awarded $250.00 in attorney fees to be paid directly to E. Kent Moore for the prosecution of this action.

Income Withholding entered and activated. Income Withholding Order to be submitted for activation by counsel for wife and in accordance with these findings.

3. The husband shall maintain medical insurance for the benefit of both children and shall pay seventy-four per cent (74%) of all uninsured health care expenses in excess of $552.00 per calender year.

*Record* at 64–65.

Skalon filed a motion to correct errors alleging that the trial court erred in ordering him to pay an amount in excess of that recommended in the child support guidelines, and in failing to require Shauna to pay twenty percent of her college expenses, as both parties requested at the hearing. The trial court denied the motion to correct errors and this appeal ensued.

1.

Skalon contends that the trial court erred in ordering him to pay support in an amount greater than is reflected in the Guidelines.

In *Kinsey v. Kinsey*, 640 N.E.2d 42 (Ind. 1994), our supreme court set out the proper standard of review when reviewing a child support award that exceeds the amount set forth in the Guidelines.

[R]eversal of a trial court's child support order deviating from the appropriate guideline amount is merited only where the trial court's determination is clearly against the logic and effect of the facts and circumstances before the trial court. [Citation omitted.] In the appellate review of modification orders, weight and credibility are disregarded, and only evidence and reasonable inferences favorable to the judgment are considered. [Citation omitted.] The modification should not be set aside unless clearly erroneous, with due regard for the opportunity of the trial court to judge the credibility of the witnesses.

*Id.* at 43–44.

With regard to Skalon's support obligation, both parties acknowledge that application of the Guidelines results in the following amounts: between $132.93 and $135.20 for one child, and between $199.79 and $204.22 for two children. However, the court's order indicates that when only one child is home, Skalon is to pay $174.00 per week, and when both children are home (i.e., when Shauna is home for more than one week), Skalon is to pay $233.00 per week ($174.00 plus $59.00). Therefore, Skalon's support obligation in each case is greater than would be arrived at through application of the Guidelines.

The mere fact that the support amount exceeds the Child Support Guideline amount does not render the order erroneous. In *Kinsey*, 640 N.E.2d 42, our supreme court determined that a trial court may order support in an amount exceeding the guideline amount. However, such a deviation must be "supported by proper written findings justifying the deviation." *Id.* at 44. Such findings need not be formal, but must set out the reasons for a deviation so that a reviewing court may know the basis for the decision. *Rockstroh v. Rockstroh*, 646 N.E.2d 55 (Ind. Ct.App.1995).

In the instant case, the trial court made no findings which indicate to this court the reasons for deviating from the guideline amount. Absent such, we are unable to assess the appropriateness of the award. Therefore, we remand to the trial court with instructions to enter findings supporting the deviation from the presumptive child support. *See id.*

2.

Skalon contends the trial court erred in refusing to accede to a request made by both parties that Shauna be responsible for

paying twenty percent of her own educational expenses.

. ■ When reviewing a challenge to an order apportioning college expenses, we apply a "clearly erroneous" standard. *Carr v. Carr,* 600 N.E.2d 943 (Ind.1992); *Glick v. Lawmaster,* 648 N.E.2d 370 (Ind.Ct.App. 1995). "We will affirm the trial court unless the decision is clearly against the logic and effect of the facts and circumstances which were before it." *Glick,* 648 N.E.2d at 374.

The apportionment between Skalon and Skalon–Gayer is not at issue. Rather, Skalon challenges the trial court's failure to order Shauna to pay a portion of her colleges expenses. Although a decision to apportion college expenses is generally reviewed for clear error, as set out above, the instant case poses a slightly different question. Namely, when fashioning a support order, is a court free to disregard *both* parents' expressed wishes if they agree that the child should pay a portion of his or her college costs and further agree as to the percentage?

■ Ind.Code Ann. § 31–1–11.5–12(b) (West Supp.1996) authorizes courts to include in a child support order a sum for the child's post-secondary education. This is a matter left to the trial court's discretion. Although a parent is under no absolute legal duty to provide a college education for his children, a court may nevertheless order a parent to pay part or all of such costs when appropriate. *See Neudecker v. Neudecker,* 577 N.E.2d 960 (Ind.1991). Much of the discussion in *Neudecker* pertaining to educational expenses focuses upon a noncustodial parent's rights and obligations in this regard. It is apparent that the discussion contemplates a dispute between the parents as to one parent's contribution, or as to the allocation of payment between the two parents. In this context, court-ordered, parental contribution is justified by "the possible use of educational expenses as a weapon wielded by disgruntled parents." *Neudecker v. Neudecker,* 566 N.E.2d 557 (Ind.Ct.App.1991), *aff'd, Neudecker,* 577 N.E.2d 960.

This justification disappears, however, when the parties agree as to the payment of college expenses. This is especially true where, as here, the parties have agreed that they will pay a large percentage of the expenses, i.e., eighty percent, and have agreed that the child should pay the remaining twenty percent.

We note that the allocation of a portion of such costs to the child is accepted in Indiana. *See Fiste v. Fiste,* 627 N.E.2d 1368 (Ind.Ct. App.1994). The Commentary to Guideline 3 of the Indiana Child Support Guidelines states, "No particular method of calculating [post-secondary education] expenses is endorsed by the Guidelines." Indiana Rules of Court at 214 (West 1996). However, the Guidelines set out the following as a factor that may be considered: "Some courts apportion the allowed educational expenses between the parties by requiring the student to bear one-third of the cost and splitting the remaining two-thirds between the parents based on their ratios of income." *Id.* While we acknowledge that the above apportionment scheme is not endorsed by the Guidelines as preferable over other schemes, it is obviously deemed acceptable.

■ To be sure, we are reluctant to create a rule whereby dissolution courts are compelled to grant parents' wishes regarding payment of post-secondary educational expenses whenever the parents are in agreement. As with other support questions, this determination must be made on a case-by-case basis. *See DeMichieli v. DeMichieli,* 585 N.E.2d 297 (Ind.Ct.App.1992). However, granting such requests serves to effectuate the parents' wishes in a situation in which it is unlikely that their wishes are the product of the type of bad motivation which IC § 31–1–11.5–12 was intended to neutralize.

We conclude that in the instant case several factors indicate that Skalon and Skalon–Gayer's mutual request should be granted. Namely, 1) Shauna would be responsible for only twenty percent of her educational costs; 2) nothing of record indicates that Shauna is incapable of contributing to her own education, *cf. Vore v. McFarland,* 616 N.E.2d 790 (Ind.Ct.App.1993) (trial court did not err in failing to order child to contribute to educational expenses where the evidence revealed that the child expended considerable effort to materially reduce the cost of her

education); 3) there is no indication that the request was "a weapon", i.e., stemmed from bad ulterior motives on the part of the parents; 4) Shauna has chosen to attend an expensive, out-of-state art institute; and 5) requiring contribution from Shauna is not unreasonable in view of the respective incomes of the parties. The trial court erred in denying the parties' mutual request that Shauna contribute twenty percent of her educational expenses.[1]

This cause is remanded with instructions to enter written findings supporting the child support obligation exceeding the Guidelines amount. The trial court's order regarding payment of Shauna's educational expenses is reversed and this cause is remanded with instructions to enter an order allocating to Shauna the responsibility of paying twenty percent of her educational expenses. The remaining eighty percent is to be paid by the parties consistent with the proportions set out in the July 15, 1996 order in this cause.

Judgment affirmed in part, reversed in part, and remanded.

STATON, J., concurs.

SULLIVAN, Judge, concurring in part and dissenting in part.

I agree with the majority with regard to the absence of findings which would justify a deviation from the presumptive amount payable under the Child Support Guidelines. I would not, however, merely mandate such findings. I would, rather, direct the court either to enter findings supporting a deviation *or* order the presumptive amount. The matter should be left to the trial court's discretion.

I respectfully disagree, however, with the majority's conclusion requiring the trial court to order the daughter to pay 20% of her educational expenses. Although the majority states a reluctance to state a rule compelling a child, not a party to the proceedings, to honor the wishes of the two parents concerning contributing to educational costs, the decision implies the establishment of such a

rule except for extreme cases. I do not overlook the fact that the particular institution involved here, is an extremely expensive and specialized private school and that it is the child's particular individualized choice.

Nevertheless, the trial court may have concluded that it is unlikely that the girl, for all practical purposes, would be able to meet the 20% financial expectations of the parents. Here, as in *Vore v. McFarland* (1993) Ind. App., 616 N.E.2d 790, the child has in fact materially contributed to the cost of her own education. Not only must she absorb all transportation and miscellaneous expenses but she acquired financial aid of approximately $5,000 to be applied to the educational cost.

Once again, the child was not a party to the modification proceedings, and in my estimation, the trial court has not abused its discretion in the apportionment of educational expenses between the parents. I would affirm that determination.

---

**1.** We agree with that trial court's determination that "expenses" in this context include room, board, tuition, books, and fees.