Robert GILBERT, Appellant–Plaintiff,

v.

Kathi GILBERT, Appellee–Defendant.

No. 45A05–0204–CV–195.

Court of Appeals of Indiana.

Nov. 4, 2002.

Melanie M. Sterba, Jill S. Swope, Kimberly R. Bubac, Wieser & Sterba, Schererville, IN, Attorneys for Appellant.

## OPINION

ROBB, Judge.

Robert Gilbert ("Father") appeals the trial court's October 16, 2001, order reinstating his child support payments and ordering him to contribute financially to his son's post-secondary educational expenses. Father also appeals the trial court's denial of his motion for clarification. We affirm in part and reverse in part.

### Issues

Father raises several issues for our review, which we consolidate and restate as follows:

1. Whether the trial court properly reinstated a child support obligation and wage withholding order for Father's twenty-one-year old son;

2. Whether the trial court properly denied Father's motion for clarification of its October 16, 2001, order;

3. Whether the trial court properly ordered Father to pay an additional portion of his son's post-secondary educational expenses; and

4. Whether the trial court properly denied Father's request for attorney's fees.

### Facts and Procedural History

Father and Kathi J. Gilbert ("Mother") were divorced pursuant to an order of the trial court dated May 25, 1984. At the time of the divorce, the parties had one son, Brian, who was born on September 20, 1980. Upon dissolution of the marriage Father was ordered to pay child support for his son.

In the fall of 1999, Brian enrolled and began taking classes at Indiana University Northwest. Father contributed $1,550 to Brian's education over the course of the first two semesters. Brian paid for the rest of his education through his employment and student loans. However, Brian struggled in the classroom for his first two years. His cumulative grade point average after the first four semesters was 2.11 out of 4.0, and his grade point average for the last two semesters was below a 2.0. Also, he has only maintained a full-time credit load for one of his four semesters.

On March 29, 2000, Mother filed a petition to modify support and determine college contribution. The hearing took place on August 23, 2001. At that time, Brian was just one month from turning twenty-one years old.[1] Following the hearing, the trial court entered an order which directed that Father's existing wage withholding order for support be vacated when Brian reached the age of twenty-one and took the issue of post-secondary education expenses under advisement.

On October 16, 2001, the trial court entered a new order reinstating Father's support payments and determining Father should pay for a portion of Brian's post-secondary educational expenses. Father filed a motion to correct errors and for clarification on November 5, 2002, alleging that the trial court erred in ordering a support obligation after the parties' son became twenty-one years of age and requesting that the trial court provide clarification regarding its ruling on post-second-

1. Brian reached the age of twenty-one on September 20, 2001.

ary educational expenses. A hearing was conducted on Father's motion to correct errors and for clarification on February 25, 2002. The trial court never issued a ruling on the motion to correct errors or for clarification. On March 27, 2002, both motions were deemed denied. Father now appeals.

## Discussion and Decision

### I. Standard of Review

■ We note at the outset that Mother failed to file an appellee's brief. In such a situation, the reviewing court does not undertake the burden of developing arguments for the appellee. *WW Extended Care, Inc. v. Swinkunas*, 764 N.E.2d 787, 790 (Ind.Ct.App.2002). Applying a less stringent standard of review with respect to showings of reversible error, we may reverse the lower court if the appellant can establish prima facie error. *Id.*

■ Decisions regarding child support are generally left to the discretion of the trial court. *Thacker v. Thacker*, 710 N.E.2d 942, 944 (Ind.Ct.App.1999). Absent an abuse of discretion or a determination that is contrary to law, a court on appeal will not disturb a trial court's order modifying child support. *Id.* In reviewing orders modifying child support, we consider only the evidence and reasonable inferences favorable to the judgment. *Hamiter v. Torrence*, 717 N.E.2d 1249, 1252 (Ind.Ct.App.1999). When reviewing a challenge to an order apportioning college expenses, we apply a "clearly erroneous" standard. *Skalon v. Skalon–Gayer*, 695 N.E.2d 953, 956 (Ind.Ct.App.1997). We will affirm the trial court unless the decision is clearly against the logic and effect of the facts and circumstances which were before it. *Id.*

### II. Reinstatement of Child Support Obligation

■ Father contends that the trial court erred by reinstating a child support obligation and wage withholding order for his twenty-one-year-old son. We agree. Indiana Code section 31–16–6–6 provides that the duty to support a child ceases when the child reaches the age of twenty-one. *Claypool v. Claypool*, 712 N.E.2d 1104, 1107 (Ind.Ct.App.1999), *trans. denied.* There are three statutory exceptions to this general rule. *See* Ind.Code § 31–16–6–6(a). However, there was no evidence presented at the hearing nor do the parties argue that Brian falls within any of the statutory exceptions. Indeed, the record indicates that the trial court recognized Brian's emancipation upon turning the age of twenty-one on September 20, 2001. In addition, on August 23, 2001, the trial court had ordered an existing wage withholding order to be vacated when Brian reached the age of twenty-one. Because Brian reached the statutory age of emancipation on September 20, 2001, and the trial court did not find that Brian fell within any of the statute's enumerated exceptions, we hold that the trial court's October 16, 2001, order for the continuation of support payments beyond September 20, 2001, is contrary to existing law. We therefore reverse the trial court's October 16, 2001, order as it pertains to continued support payments.

### III. Clarification of the October 16, 2001 Order

■ Father contends that the trial court erred by failing to rule on his motion for clarification of the October 16, 2001, order reinstating support payments and requiring Father to contribute financially to Brian's college expenses. We agree.

■ A judgment is said to be ambiguous when it would lead two reasonable persons to different conclusions as to its effect and meaning. *Brown v. Brown*, 581 N.E.2d 1260, 1263 (Ind.Ct.App.1991). If a

judgment is ambiguous, we determine its meaning by examining the entire judgment. *Tri–Professional Realty, Inc. v. Hillenburg,* 669 N.E.2d 1064, 1068 (Ind.Ct. App.1996). Particular words cannot be isolated from the judgment but must be considered as part of the whole. *Id.* We attempt to read the provisions of the judgment so as to render all provisions effective and not merely surplusage. *Id.* In the construction of a judgment, the reviewing court may look at the entire record, including but not limited to the complaint, findings, argument, and evidence, to ascertain its meaning and effect. *Brown,* 581 N.E.2d at 1263. Judgments should be liberally construed as to make them serviceable and not useless. *Otto v. Park Garden Associates,* 612 N.E.2d 135, 140 (Ind.Ct. App.1993).

The parties are clearly reaching conflicting conclusions after interpreting the trial court's October 16, 2001, order. The order states in relevant part:

> The [c]ourt having reviewed the evidence and pertinent case law, now rules as follows:
>
> 1. Parties' son is now 21 years of age, lives with his mother, is employed part-time, and attending Indiana University Northwest. He has not been a very diligent student especially in 2001, when his grades dropped precipitously and he was fired from his high paying part-time job.
>
> 2. Current support is modified to Sixty ($60.00) Dollars per week, (see Worksheet), which is a deviation from the Guidelines because of Brian's age and ability to earn a higher wage. However, [Mother's] testimony establishes he is re-employed, albeit at a lower paying job, and has had counseling which she feels has helped his attitude and behavior.
>
> 3. Although Brian is not where he should be in pursuing his education degree, the Court feels he should have one more chance to attain his goal with his Father's help. [Father] should also contribute to Brian's post secondary education expenses. He has already paid approximately one-half (1/2) of these expenses although Brian has not accumulated enough hours in 3 of 4 semesters to be considered a full-time student. Parties earn roughly the same salary and Brian should be required to pay thirty-two (32%) percent of his school expenses, with [Mother] paying the rest.
>
> The support and school contribution is effective September 20, 2001, because delay in coming into Court was caused or acquiesced in by Petitioner.
>
> Finally, the support and school contribution will be in effect from Fall Semester 2001, through Spring Semester 2003, including the Summer Semester. For summer school, Father shall pay support plus thirty-six (36%) percent of the tuition, fees, and books. If Brian fails to maintain a 2.0 Grade Point Average, or completes less than 13 credit hours in any semester or 9 hours in a Summer Semester, [Father's] obligation for support and education expenses immediately ends without further Order of Court.

Appellant Record at 5.

Father contends the order requires him to pay for thirty-six percent of summer school and nothing more. He believes this interpretation is supported by the trial court's recognition that Brian struggled

academically for his first two years of college, that Brian was employed and receiving student loans that virtually paid for all of his two years of education in full, and that Father has already contributed $1,550 towards a portion of Brian's college expenses. In contrast, Mother believes the order did not intend Father's $1,550 over the course of Brian's first two years of college to be the full extent of his contribution. Although she failed to provide an appellee's brief, the record shows that Mother believes the extended support payments are essentially Father's continuing contribution towards Brian's education. Therefore, in addition to the previous $1,550 contribution, Mother believes Father is required to pay the weekly support payments through Spring Semester 2003 as well as pay for thirty-six percent of Brian's summer school. The parties are clearly reaching very different conclusions.

■ In interpreting the trial court's order it is critical to take into account the language of the entire order. *Tri–Professional Realty, Inc.,* 669 N.E.2d at 1068. The language of the order clearly states that Brian should be given another chance to complete his college degree with his Father's help. However, the language of the order also indicates that the trial court took into account Brian's academic difficulties, his student loans and employment, Father's previous $1,550 contribution, and the similar salaries of the parties. These factors led the trial court to conclude that, "Brian should be required to pay thirty-two (32%) percent of his school expenses, with [Mother] paying the rest...." Appellate Record at 5.

■ We believe that the trial court intended for Brian to pay for thirty-two percent of his college expenses from September 20, 2001, until the end of the Spring 2003 semester, and for Mother to pay for the remaining sixty-eight percent of the college expenses. We also believe that in addition to $1,550 already advanced by Father towards Brian's college expenses, the trial court intended Father to pay for thirty-six percent of the tuition, fees, and books for summer school. For the reasons stated in the discussion above, Father is not required to make support payments after Brian reached the age of twenty-one.

## IV. Post–Secondary Educational Expenses

■ Father contends that the trial court erred by ordering him to pay an additional portion of Brian's post-secondary educational expenses. He argues that Brian failed to establish an appropriate aptitude for post-secondary educational endeavors such that his parents should not be required to contribute to the costs of the education. In addition, Father contends that Mother induced him to pay college expenses that were previously satisfied through Brian's student loans. Finally, Father argues that the trial court should not have ordered him to contribute to Brian's college education because Brian is capable of paying for his own post-secondary expenses through student loans and employment. We disagree.

■ Indiana Code section 31–16–6–2(a) provides that an educational support order may include amounts for the child's education in institutions of higher learning. Educational support orders must take into account the child's aptitude and ability; the child's reasonable ability to contribute to educational expenses through work, loans, and obtaining other sources of financial aid reasonably available to the child and each parent; and the ability of each parent to meet these expenses. Ind.Code § 31–16–6–2(a). The trial court's decision concerning financial contributions to college endeavors will be affirmed unless the

decision is clearly against the logic and effect of the facts and circumstances which were before it. *Skalon*, 695 N.E.2d at 956. Although a parent is under no absolute legal duty to provide a college education for his children, a court may nevertheless order a parent to pay part or all of such costs when appropriate. *Id.*

## A. Appropriate Aptitude for Post–Secondary Education

■ Father contends that he should not be required to contribute financially to Brian's college endeavors because Brian failed to establish an appropriate aptitude for post-secondary education. College expenses hinge on a review of the aptitude and ability of the child and the means of the parties. *Carr v. Carr*, 600 N.E.2d 943, 945 (Ind.1992). In *Taylor v. Chaffin*, this court reviewed the aptitude and ability of a child who had a low grade point average in high school, only achieved a 1.88 grade point average after two years of college, and lacked sufficient credit hours compared to other students who had been in college for two years. 558 N.E.2d 879 (Ind.Ct.App.1990). This court concluded that the child had established an appropriate aptitude for post-secondary education. *Id.* at 884. The court noted that the "[trial] court's order clearly reflects a consideration of the relevant factors in that it requires [the child] to maintain a 2.0 grade point average each semester and by limiting the duration of the educational support to four semesters." *Id.*

■ We believe Brian's situation is similar to the child in *Taylor*. In this case, Brian has not accumulated sufficient hours as compared to other students who have been in school for two years, and has only achieved a 2.11 grade point average after two years of college. His most recent semester grade point average slipped to a 1.1, and he has only maintained a full-time credit load in one of four semesters. The trial court's October 16, 2001, order conditions Father's financial contribution on Brian maintaining above a 2.0 grade point average and completing at least thirteen credit hours each semester or nine hours in a summer semester. In addition, Father's contribution only continues for four more semesters. Although Brian has clearly struggled academically through college, we believe the trial court's October 16, 2001, order provides sufficient parameters to assure Father that he will only be required to pay for a child who continues to maintain an appropriate aptitude for post-secondary education. Because the October 16, 2001 order contains specific parameters that clearly reflect consideration of Brian's aptitude for post-secondary education, we decline to find that the trial court's decision is clearly erroneous.

## B. Repayment of Son's College Expenses

■ Father contends that Mother induced him to pay sums toward Brian's college expenses that were already paid for by financial aid. Father relies on *Best v. Best*, where a mother fraudulently induced her ex-husband to overpay for their daughter's college expenses. 470 N.E.2d 84 (Ind.Ct.App.1984). In that case, the trial court ordered the ex-husband to pay college expenses for his daughter. After the court issued the order, the mother and daughter applied for financial aid and falsely stated on the application that there was no agreement or support order for contribution to the daughter's education expenses. Prior to receiving the college expense payments, the mother fraudulently provided the ex-husband with an altered tuition schedule and statement that failed to show that the daughter was receiving financial aid. As a result, the ex-husband overpaid for the college expenses. This

court affirmed the trial court in ordering the mother to refund the overpayments. *Id.* at 88.

Father argues that this case is similar to *Best*, and he is therefore entitled to a refund for overpayments made to Mother. We disagree. In this case, the trial court did not find that Mother misrepresented any of the college expense payments as the mother did in *Best*. Although Father was not aware that Brian was receiving financial aid, there was no evidence that Mother attempted to mislead Father in order to reap financial gain. Indeed, Father not knowing that Brian was receiving financial aid is as much a result of his unwillingness to stay informed of the happenings in his son's life as it is Mother's failure to inform Father of such information. Because the trial court did not find, and the record does not support, any fraudulent misrepresentations made by Mother regarding Brian's financial aid, we refuse to order a refund of Father's financial contributions to Brian's post-secondary education expenses.

### C. Child Capable of Paying for His Own College Expenses

■ Father also contends that Brian is capable of paying for his own college expenses through student loans and employment, and therefore, the trial court abused its discretion by ordering Father to continue to pay for a portion of Brian's post-secondary education. We disagree. The commentary to the Child Support Guidelines states:

> If the [trial court] determines that an award of post-secondary educational expenses is appropriate, it should apportion the expenses between the parents and the child, taking into consideration scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student. These sources of assis-

tance should be credited to the child's share of the educational expense.

Ind. Child Support Guideline 6, Commentary, Extraordinary Educational Expenses.

■ We have interpreted this commentary to mean that the trial court should first determine how much of the total expense may reasonably be borne by the child and how much should be borne by the parents. *Claypool*, 712 N.E.2d at 1109. In some instances, the trial court may find that the child cannot reasonably be expected to contribute anything to his college expenses beyond non-reimbursable funding such as scholarships and grants. *Id.* When considering the various cost-reducing programs, the trial court should take into account the difference between non-reimbursable student aid such as grants and scholarships, and student loans, which place a financial burden upon the student. *Id.*

The trial court in this case clearly accounted for employment and other cost-reducing programs available to Brian. The October 16, 2001, order dictates that Brian is to pay for a portion of his expenses for his final two years of college. Brian has already taken out student loans and maintained some type of employment in order to assist in paying for his education. He will no doubt have to continue to maintain employment or apply for additional student aid in order to satisfy the trial court's order for his final two years of college, even with assistance from his Mother and Father.

■ Father also argues that Brian's decision to not apply for financial aid for the 2001 school year was not taken into account in the trial court's decision. However, in fashioning an order for post-secondary education, the trial court considers what the child can reasonably be expected

to contribute. *Id.* In light of the circumstances surrounding this particular case, it is not unreasonable for the trial court to conclude that Brian should not be burdened with additional student loans for his final two years of college. For the above reasons, the trial court did not err in determining that Brian's parents should contribute to his post-secondary educational expenses.

### V. Attorney's Fees

Father contends that the trial court erred in failing to award Father attorney's fees. We disagree. In post-dissolution proceedings, the trial court may order a party to pay a reasonable amount for attorney's fees. Ind.Code § 31–16–11–1. The trial court has broad discretion in awarding attorney fees. *Selke v. Selke,* 600 N.E.2d 100, 102 (Ind. 1992). We will reverse the trial court's decision only when it is against the logic and effect of the facts and circumstances before the court. *Id.*

In assessing attorney's fees, the court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors that bear on the reasonableness of the award. *Id.* In addition, any misconduct on the part of one of the parties that directly results in the other party incurring additional fees may be taken into consideration. *Claypool,* 712 N.E.2d at 1110. The court need not give reasons for its determination. *In re Marriage of Tearman,* 617 N.E.2d 974, 978 (Ind.Ct.App.1993).

Here, the trial court ordered each party to pay their own attorney's fees. Although the trial court did not give an explanation in the October 16, 2001 order, the court is not required to give explicit reasons for its determinations. *Id.* Upon our own review of the facts and circumstances, it is clear that the parties have comparable earning abilities and similar resources at their disposal. Although Mother was not timely in answering Father's requests for documentation of Brian's college expenses, the trial court did not find nor do we find that Mother engaged in willful delay tactics or misconduct during the course of the proceedings. We affirm the trial court's decision ordering each party to pay their own attorney's fees.

### Conclusion

In conclusion, we reverse the trial court's order continuing child support payments past Brian's twenty-first birthday. We clarify the trial court's October 16, 2001, order as stated herein, and affirm the trial court regarding Father's required contributions towards Brian's post-secondary educational expenses. The trial court's order requiring each party to pay his or her own attorney's fees is affirmed.

Reversed in part, affirmed in part.

RILEY, J., and MATTINGLY–MAY, J., concur.