## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2019, 9:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cassandra A. Kruse
EMSWILLER, WILLIAMS, NOLAND & CLARKE, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Denise F. Hayden
LACY LAW OFFICE, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

C.B.,

*Appellant-Respondent,*

v.

L.B.,

*Appellee-Petitioner.*

January 30, 2019

Court of Appeals Case No. 18A-DC-1547

Appeal from the Hendricks Superior Court

The Honorable Mark A. Smith, Judge

Trial Court Cause No. 32D04-1703-DC-165

**Bailey, Judge.**

# Case Summary

C.B. ("Husband") appeals the trial court's Findings, Conclusions, and Decree of Dissolution, following a bifurcated bench hearing.

We affirm in part, reverse in part, and remand with instructions.

# Issues

Husband raises three issues on appeal, which we restate as follows:

> (1) Whether the trial court abused its discretion when it denied Husband's claim for spousal maintenance.

> (2) Whether the trial court erred in deviating from the presumptive child support obligation.

> (3) Whether the trial court abused its discretion when it awarded L. B. ("Wife") $250.00 for attorney fees incurred in moving to compel discovery responses.

# Facts and Procedural History

Husband and Wife (collectively, "Parties") were married on August 14, 2004, and had one child, E.B., born September 28, 2008. Until May of 2012, Parties both worked full-time. In May of 2012, Husband was involved in a serious accident at his place of employment. His injuries required surgery and other treatments and left him unable to work for a period of time. During that time, Husband received Worker's Compensation benefits which he used to pay

marital expenses, such as the mortgage on the family home.  Husband also received over $100,000 in life insurance proceeds when his grandfather died in 2016.

On March 10, 2017, Wife filed a petition for dissolution of the marriage. Parties had a final dissolution hearing on March 16 and March 23, 2018.  On May 4, 2018, the trial court issued "Findings of Fact, Conclusions[,] and Decree of Dissolution."  Appealed Order at 1.  The trial court ordered that Parties were to have joint legal custody of E.B., with Mother having primary physical custody.  Father was granted parenting time pursuant to the Indiana Parenting Time Guidelines, with additional midweek overnight parenting time. In addition, the trial court made the following relevant findings:

* * *

44.     Wife earns approximately $54,000/year gross income, or $1,038.00/week.

45.     Husband currently has no weekly income.  He has not worked full-time since a work-related accident in 2012.  He has applied for disability and was denied.  However, he never applied for disability until August 2017, after the filing of the Petition in this case.  By his own admission, Husband has not actively looked for any work that could accommodate him.

46.     Wife provides health insurance and dental insurance for [E.B.] at a cost of $23.15 per week. Wife shall continuance [sic] to provide health and dental insurance [for E.B.] for so long as it is offered to her through her employment at a reasonable cost.

47.     In May 2012, Husband was involved in a serious forklift accident at work.  The accident left Husband severely injured and Husband had to have several surgeries and treatment over the course of nearly three (3) years.

48.     Husband requested spousal maintenance pursuant to I.C. § 31-15-7-2 of $2,000/month.  According to Husband, he is unable to work.  He testified that he suffers from intense pain and swelling in his left leg, and depression.  Husband testified that he feels paralyzed from his knee down.  He claims [that he is] having difficulty walking or moving around easily.

49.     Doctor Andrew Campbell is Husband's family medical doctor.  He has treated Husband since 2011.  He described Husband as having a chronic left sciatic nerve lesion due to a remote injury.

50.     Husband has a history of deep vein thrombosis. However, this is not a current diagnosis and he is not currently having any symptoms of the same.

51.     Husband is overweight.  As of March 2, 2018, Husband weighed over 400 pounds.  Any functional limitations are compounded by Husband's weight.  Husband sees a weight specialist to address his weight issues.

52.     Husband takes multiple medications and sees a psychologist for depression.  Husband is currently treating with Dr. Mossbarger for depression.  Husband has been cooperative in his treatment for depression and his symptoms are being managed by both medicine and therapy.

53.    While Husband has expressed some difficulty with getting himself out of bed due to his depression, there was no indication that he is unable to parent [E.B.].

54.    Husband was able to do some work after his injury when he helped Wife work her second job of data entry in 2014.

55.    Husband told the GAL [Guardian ad Litem] that he did not want to apply for disability and that he preferred to work. He further indicated to the GAL that he only needed minor accommodations.

56.    Husband has had the exclusive access to and use of over $100,000 from his grandfather's life insurance proceeds that is being apportioned to him in the final division of the marital estate. The proceeds were received just before the date of final separation.

57.    As of the final hearing, Husband had $6,000.00 in savings and $1,000.00 in checking.

58.    Considering I.C. § 31-15-7-2, the Court finds Husband's request for permanent spousal disability maintenance should be denied. Husband's request for $2,000/month to be paid is wholly unreasonable. [Wife] only makes $54,000.00 per year gross income. Husband's request was for Wife to pay him approximately 44% of her gross income. Moreover, the evidence, including his medical records, does not support a finding of a permanent disability preventing Husband from returning to any form of work. Exhibit 40 provides a detailed summary of Husband's progression from being unable to work when he initially went to Ortho Indy on June 6, 2012 to being "able to return to full duty work status with no restrictions" as of May 11, 2015.

59.    It is appropriate to impute to Husband minimum weekly gross income of $290.00 consistent with full-time minimum wage for purposes of child support.

60.    Application of the Child Support Guidelines results in a recommended $50.00 per week obligation to be paid by Wife to Husband.[1]  However, the Court deviates and orders a $0.00 child support obligation at this time because Wife will be paying all controlled expenses.

61.    Wife shall be responsible for the first $600.00 in annual uninsured healthcare expenses for [E.B.].  The balance shall be split with Wife paying 78% and Husband paying 22%.

* * *

78.    Wife requested that Husband be ordered to pay her $250 in attorney fees because of a discovery dispute that resulted in Wife filing a Motion for Order Compelling Discovery on June 24, 2017.  The Court finds Wife's requested $250.00 in expenses reasonable.  Therefore, the Court orders Husband to pay Wife $250.00 in 30 days from this order for her filing the Motion for Order Compelling Discovery on June 24, 2017.

* * *

Appealed Order at 6-8, 13.  Husband now appeals.

---

[1] The order is not accompanied by a child support worksheet.  The record contains two child support worksheets (Ex. Vol. 4, Exs. 34 and 35), although it appears that neither of those worksheets were used by the trial court in its ultimate child support calculation, as neither worksheet results in a recommended $50.00 per week obligation to be paid by Wife.

# Discussion and Decision

## Spousal Maintenance

[6] Husband challenges the trial court order denying his request for spousal maintenance. We review such an order for an abuse of discretion and we will reverse only if the decision is clearly against the logic and effect of the facts and circumstances of the case. *E.g.*, *Augspurger v. Hudson*, 802 N.E.2d 503, 508 (Ind. Ct. App. 2004). Moreover, where, as here, the trial court enters findings of fact and conclusions of law pursuant to Indiana Trial Rule 52, we will set aside such findings "only if they are clearly erroneous in that the record is devoid of facts or inferences to support the findings, or that the judgment is unsupported by the findings." *Id*. at 509 (quoting *Fuehrer v. Fuehrer*, 651 N.E.2d 1171, 1173 (Ind. Ct. App. 1995), *trans. denied*). In making such a determination, we neither reweigh the evidence nor reassess the credibility of the witnesses. *Id*.

[7] Indiana Code Section 31-15-7-2 allows a court to award a spouse post-dissolution "incapacity maintenance" if the court "finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected." *See also Palmby v. Palmby*, 10 N.E.3d 580, 583 (Ind. Ct. App. 2014). Here, the trial court found that Husband was able to work. Citing Husband's medical records from Ortho Indy in Exhibit 40, the trial court noted those documents state that, as of May 11, 2015, Husband was "able to return to full duty work status with no restrictions." Confidential Ex. Vol. V, Ex. 40. The court also noted that

Husband admitted that he has "not actively looked for any work that could accommodate him" and that he "only needed minor accommodations" to work. Appealed Order at 6, 7. Furthermore, the court found that Husband had, in fact, done some work after his injury when he helped Wife with her data entry job. All of that evidence supports the trial court's finding that Husband does not have "a permanent disability preventing Husband from returning to any kind of work." *Id*. at 8. And that finding supports the trial court's conclusion that Husband's request for spousal maintenance should be denied. Husband's assertions to the contrary are merely requests that we reweigh the evidence, which we cannot do. *Augspurger*, 802 N.E.2d at 508.

## Child Support Calculation

[8] Husband challenges the trial court's calculation of child support. On review, we afford the trial court broad discretion in fashioning child support orders, and we will reverse only if the child support determination is clearly against the logic and effect of the facts and circumstances. *E.g.*, *Fields v. Fields*, 749 N.E.2d 100, 104-05 (Ind. Ct. App. 2001), *trans. denied*. Moreover, "weight and credibility issues are disregarded and only the evidence and reasonable inferences favorable to the judgment are considered." *Id*. (citing *Kinsey v. Kinsey*, 640 N.E.2d 42, 43-44 (Ind. 1994)). And we set aside the trial court findings only if they are clearly erroneous. Ind. Trial Rule 52(A).

Husband contends that the trial court erred when it reduced Wife's $50 child support obligation[2] to $0 "because Wife will be paying all controlled expenses." Appealed Order at 8. He asserts that reduction was erroneous because Wife's payment of the controlled expenses is already factored into the child support obligation. We agree.

Indiana's Child Support Guidelines ("Guidelines") "are based on the assumption the children live in one household with primary physical custody in one parent who undertakes all of the spending on behalf of the children." Guideline 6, Analysis of Support Guidelines cmt. The Guidelines define "controlled expenses" as "items like clothing, education, school books and supplies, ordinary uninsured health care[,] and personal care." *Id.*, Controlled Expenses cmt. The controlled expenses are "the sole obligation" of the custodial parent who does not receive a parenting time credit. *Id.*, Analysis of Parenting Time Costs cmt. These controlled expenses "account for 15% of the cost of raising the child," *id.*, Controlled Expenses cmt., and "are *assumed to be equal to 15% of the Basic Child Support Obligation*,"[3] *id.*, "Analysis of Parenting Time Costs" cmt. (emphasis added). Thus, the Basic Child Support Obligation already includes controlled expenses. *Id.* This is why the comments note that the controlled expenses are "generally not a consideration unless there is equal

---

[2] It is undisputed that the Guidelines allow a trial court to award child support to a non-custodial parent. *See R.B. v. K.S.*, 25 N.E.3d 232, 235 (Ind. Ct. App. 2015) (citing Guideline 3(F)).

[3] The "Basic Child Support Obligation" is the amount of support calculated by applying the Guideline Schedules for Weekly Support Payments to the parents' combined weekly adjusted income. Guideline 3(D).

parenting time[,]" and they "are not pertinent for litigation." *Id.*, Controlled Expenses cmt.

[11] The trial court abused its discretion when it reduced Wife's $50 child support obligation to $0 on the grounds that Wife will be paying all controlled expenses, as her payment of controlled expenses was already taken into consideration in reaching the amount of the child support obligation.[4]

## Attorney's Fees

[12] Husband maintains that the trial court erred when it ordered him to pay Wife $250 in attorney fees incurred in filing a motion to compel discovery. Husband does not disagree that there was a discovery dispute which required Wife to file a motion to compel. Nor does he dispute that the trial court correctly granted the motion to compel. Rather, he contends that the trial court erred in ordering him to pay the fees for such a motion because Husband had already paid $900 towards Wife's attorney fees, and Husband has significantly less income than Wife.

[13] The "purposes of sanctioning discovery violations 'is not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a

---

[4] Husband asserts for the first time in his reply brief that the trial court erred in "imput[ing] income to Husband at minimum wage" when calculating the child support obligation. Reply Br. at 6. However, claims raised for the first time in a reply brief are waived. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) (citation omitted) ("The law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived.").

deterrent.'" *Whitaker v. Becker*, 960 N.E.2d 111, 115 (Ind. 2012) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 (1976)). We review a trial court's sanction for a discovery violation for an abuse of discretion. *Id.* And a trial court's "discovery rulings are given a strong presumption of correctness because they are usually fact-sensitive." *Gonzalez v. Evans*, 15 N.E.3d 628, 633 (Ind. Ct. App. 2014), *trans. denied*. There is also "a presumption that attorney fees will be awarded to a party who successfully moves to compel discovery." *Id.* at 640.

[14] Here, it is undisputed that the trial court awarded Wife $250 in attorney fees because she successfully moved to compel Husband to comply with her discovery requests. Husband has failed to provide any evidence or persuasive argument to rebut the presumption that such a discovery sanction was correct. His arguments that he had already paid a portion of Wife's attorney fees and that he has less money than Wife are irrelevant to the purpose for which discovery violation sanctions are issued. The trial court did not abuse its discretion in issuing its discovery sanction.[5]

---

[5] Once again, Husband raises an argument for the first time in his reply brief; he contends that the attorney fee affidavit in support of the request for sanctions indicates that Wife's attorney only spent .30 hours of time on the motion to compel. Reply Br. at 6. That argument is waived. *Monroe Guar. Ins. Co.*, 829 N.E.2d at 977. Waiver notwithstanding, Husband is incorrect. The attorney fee affidavit reflects that Wife's attorney spent 1.30 hours of time on the motion to compel. Ex. Vol. IV, Ex. 66.

# Conclusion

The trial court did not abuse its discretion in denying Husband's request for spousal maintenance and requiring Husband to pay $250 of Wife's attorney fees as a sanction for a discovery violation. However, the trial court did err in reducing Wife's $50 child support obligation to $0 on the grounds that Wife will be paying all controlled expenses.

Affirmed in part, reversed in part, and remanded with instructions to enter a new child support order.

Bradford, J., and Brown, J., concur.